**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SUZANNE YARROW

        Plaintiff,

  - v -

MEDIVATORS INC., THOMAS LUTHY and
CANTEL MEDICAL CORP.

        Defendants.

Case No. 7:16-cv-07952 (CS)

**ANSWER AND**
**AFFIRMATIVE DEFENSES**

---

    Defendants Medivators Inc. ("Medivators"), Thomas Luthy ("Luthy"), and Cantel Medical Corp. ("Cantel," and together with Medivators and Luthy, "Defendants"), as and for their Answer to the Complaint, dated October 11, 2016 (the "Complaint"), of Plaintiff Suzanne Yarrow ("Plaintiff" or "Yarrow"), state as follows:

**PARTIES**

    1.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1, and these allegations are therefore deemed denied.

    2.    Defendants admit that Medivators' headquarters is located in Minneapolis, Minnesota. Defendants otherwise deny the allegations in Paragraph 2, which contain legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

    3.    Admitted.

    4.    Defendants admit that Luthy is an individual who resides in Norwalk, Connecticut, and that Luthy was Yarrow's supervisor from the commencement of Luthy's

employment with Medivators in or around December 2014 through September 25, 2015. Defendants otherwise deny the allegations in Paragraph 4.

5. Defendants admit that Luthy is an individual who resides in Norwalk, Connecticut, and that Luthy was Yarrow's supervisor from the commencement of Luthy's employment with Medivators in or around December 2014. Defendants otherwise deny the allegations in Paragraph 5.

## JURISDICTION AND VENUE

6. The allegations in Paragraph 6 are legal conclusions to which no response is required. To the extent a response is required, the allegations in Paragraph 6 are denied.

7. The allegations in Paragraph 7 are legal conclusions to which no response is required. To the extent a response is required, the allegations in Paragraph 7 are denied.

8. The allegations in Paragraph 8 are legal conclusions to which no response is required. To the extent a response is required, the allegations in Paragraph 8 are denied.

## PROCEDURAL HISTORY

9. Defendants admit that Yarrow filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") on or about November 18, 2015, which document speaks for itself. By way of further response, Defendants state that Yarrow's EEOC charge was issued to Cantel, even though Yarrow was never employed with Cantel. To the extent the allegations in Paragraph 9 purport to assert the truth or veracity of the allegations contained in Yarrow's EEOC charge, they are denied.

10. Defendants admit that Yarrow filed an amended charge with the EEOC on or about June 9, 2016, which document speaks for itself. By way of further response, Defendants state that Yarrow's EEOC charge was issued to Cantel, even though Yarrow was never

employed with Cantel. To the extent the allegations in Paragraph 10 purport to assert the truth or veracity of the allegations contained in Yarrow's amended EEOC charge, they are denied.

11. Admitted.

## STATEMENT OF FACTS

### Background

12. Defendants admit that Yarrow was employed by Medivators from in or around December 2009 through in or around April 2016, and otherwise deny the allegations contained in Paragraph 12, including but not limited to the allegation that Yarrow "was constructively discharged."

13. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 13, and therefore these allegations are deemed denied.

14. Denied. By way of further response, Defendants state that Medivators is in the business of designing, developing, manufacturing, and selling medical devices critical to endoscopy and infection prevention and control, and in doing so, offers branded products in areas relating to, among other things, endoscope reprocessing and endoscopy procedure.

15. Admitted.

16. Defendants admit that as Clinical Education Specialist, Yarrow was responsible for, among other things, providing technical sales and service support to end-use customers for automated endoscope reprocessing systems and related consumables in clinical and hospital settings, and otherwise deny the allegations contained in Paragraph 16.

17. Defendants admit that as Clinical Education Specialist, Yarrow was responsible for, among other things, providing product education and problem-solving assistance to end-use

customers in clinical and hospital settings, and otherwise deny the allegations contained in Paragraph 17.

18.     Defendants admit that as Clinical Education Specialist, Yarrow's job duties and responsibilities including, among other things, providing product education and service support to end-use customers in clinical and hospital settings regarding products relating to endoscope reprocessing and endoscopy procedure, and otherwise deny the allegations contained in Paragraph 18.

19.     Admitted.

20.     Denied.

21.     Denied. By way of further response, Defendants state that the Reprocessing Sales Consultant/Capital Specialist responsible for the New York City area was terminated in or around May 2012.

22.     Denied. By way of further response, Defendants refer Plaintiff to their response to Paragraph 21.

23.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 23, and therefore these allegations are deemed denied.

24.     Denied.

25.     Defendants admit that hospitals and health care facilities may vary in size, and otherwise deny the allegations contained in Paragraph 25.

26.     Defendants admit that certain endoscope-disinfecting equipment Medivators sells to end-use customers requires the use of hot water while in operation to function most effectively, and otherwise deny the allegations contained in Paragraph 26.

27.     Defendants admit that the relative age of plumbing and electrical equipment in hospitals and health care facilities may vary, and otherwise deny the allegations contained in Paragraph 27.

28.     Defendants admit that proper installation of certain Medivators products in hospitals and health care facilities may require consideration of, among other things, water pressure, water temperature, and water sediment levels, and otherwise deny the allegations contained in Paragraph 28.

29.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 29, and therefore these allegations are deemed denied.

30.     Defendants admit that Yarrow briefly assisted with certain sales-related functions on a temporary basis while working as a Clinical Educational Specialist, and otherwise deny the allegations contained in Paragraph 30.

31.     Denied.  By way of further response, Defendants state that Yarrow moved into the role of Reprocessing Business Consultant, the role subsequently re-titled Capital Specialist, in or around July 2012.

**Ms. Yarrow's Job Duties as a Capital Specialist**

32.     Defendants admit that the duties and responsibilities of a Capital Specialist include, among other things, meeting or exceeding sales quotas with respect to certain endoscope reprocessing and endoscopy procedure-related products, and otherwise deny the allegations contained in Paragraph 32.

33.     Admitted.

34.     Admitted.

35.     Admitted.

36.     Denied.

37.     Defendants admit that Automatic Endoscope Reprocessors come in multiple sizes and with varying price points, and otherwise deny the allegations contained in Paragraph 37.

38.     Defendants admit that the life cycle of an Automatic Endoscope Reprocessor may vary, and otherwise deny the allegations contained in Paragraph 38.

39.     Denied.

40.     Defendants admit that among Capital Specialists' many job duties and responsibilities is to build trust and positive relationships with end-use customers located in their assigned sales territories, and otherwise deny the allegations contained in Paragraph 40.

41.     Defendants admit that a customer's decision to purchase an Automatic Endoscope Reprocessor from Medivators may involve more than one individual, and otherwise deny the allegations contained in Paragraph 41.

42.     Admitted.

43.     Defendants admit that the ENDORA system is an electronic documentation system that performs various functions in connection with the tracking of endoscopes, and otherwise deny the allegations contained in Paragraph 43.

44.     Defendants admit that the cost of the ENDORA system may vary, and otherwise deny the allegations contained in Paragraph 44.

45.     Denied.

46.     Denied.

47.     Admitted.

48. Defendants admit that Eric Sandvich held the position of Regional Sales Director for the Northeast Region from in or around August 2014 through in or around November 2014, and otherwise deny the allegations contained in Paragraph 48.

49. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 49, and therefore these allegations are deemed denied.

### Mr. Luthy Becomes Ms. Yarrow's Supervisor and Commences a Campaign of Discriminatory Conduct

50. Admitted. By way of further response, Defendants state that Yarrow was among Luthy's eleven direct reports upon his joining Medivators as the new Regional Sales Director for the Northeast Region in December 2014.

51. Denied. By way of further response, Defendants state that beginning with fiscal year 2014, Medivators adopted a new sales strategy that included a "POD" approach, which emphasized a more cooperative and collaborative approach to sales.

52. Admitted. By way of further response, Defendants state that PODs also included other Medivators personnel to promote a cooperative approach toward sales, support, and service.

53. Denied. By way of further response, Defendants state that upon joining Medivators in December 2014, Luthy had more than 15 years of prior experience marketing and/or selling medical devices and related equipment, including endoscopic devices and equipment.

54. Denied.

55. Denied.

56. Denied.

57.     Defendants admit that Luthy and Yarrow met at a Starbucks in Darien, Connecticut on or about January 26, 2015 to discuss Yarrow's business development plans and performance as Capital Specialist, and otherwise deny the allegations in Paragraph 57.

58.     Denied.

59.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 59, and therefore these allegations are deemed denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

**Ms. Yarrow Excels in Her Position Despite Mr. Luthy's Conduct**

66.     Denied.

67.     Defendants admit that Yarrow at one time ranked fourth for the Don Byrne Founders Award, and otherwise deny the allegations contained in Paragraph 67. By way of further response, Defendants state Scott Nicholson—not Yarrow—won the Don Byrne Founders Award for fiscal year 2015, and that Yarrow has never won this award. Defendants further state that Medivators subsequently determined that the calculation previously used for this award had the tendency to potentially unfairly reward a poor performer, as the calculation had been based on a Capital Specialist's increase in sales from year to the next year—rather than his or her

overall sales performance. Using the existing calculation, Yarrow would have ranked toward the bottom among all Capital Specialists for fiscal year 2015.

68.     Denied. By way of further response, Defendants state that the award is a type of incentive award, and that using the existing calculation for this award, Yarrow would have ranked toward the bottom among all Capital Specialists for fiscal year 2015.

69.     Denied. By way of further response, Defendants state that the award is a type of incentive award, and that using the existing calculation for this award, Yarrow would have ranked toward the bottom among all Capital Specialists for fiscal year 2015.

70.     Denied. By way of further response, Defendants state that the calculation for the award had previously been based on a Capital Specialist's increase in sales from one year to the next.

71.     Defendants admit that Iuele, Makovec, and Moreau placed ninth, thirteenth, and twentieth respectively for the Don Byrne Founders Award for fiscal year 2015 under the previous method of calculation, and otherwise deny the allegations contained in Paragraph 71. By way of further response, Defendants state that the previous method of calculation had a tendency to unfairly reward a poor performer, and that using the existing method of calculation, Yarrow would have ranked among toward the bottom among all Capital Specialists for fiscal year 2015.

72.     Denied.

73.     Denied. By way of further response, Defendants state that Slater is not a Capital Specialist and his sales goals were never "[i]n contrast" to those pertaining to Yarrow.

74.     Admitted.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.  By way of further response, Defendants state Yarrow that failed to meet her overall revenue requirements for fiscal year 2015.

80.     Defendants admit that Yarrow received a 2015 Quota Achiever's Award, and otherwise deny the allegations contained in Paragraph 80.  By way of further response, Defendants state that Yarrow ranked 15th out of 26 Capital Specialists in total sales for fiscal year 2015, and 19th out of 26th in Service Rank for fiscal year 2015.

81.     Defendants admit that Yarrow received an incentive award for her sales of the ENDORA system in fiscal year 2015, and otherwise deny the allegations contained in Paragraph 81.  By way of further response, Defendants state that Yarrow failed to reach her total sales revenue requirement for fiscal year 2015, and ranked 15th out of 26 Capital Specialists in total sales revenue for fiscal year 2015.

82.     Defendants admit that Yarrow sold two ENDORA systems in fiscal year 2015, and otherwise deny the allegations contained in Paragraph 82.  By way of further response, Defendants state that even including her sales of the ENDORA system, Yarrow failed to meet her overall sales revenue requirements for fiscal year 2015, and that the sales revenue Yarrow generated from the ENDORA system represented only a fraction of her overall sales revenue.

**Mr. Luthy Further Efforts to End Ms. Yarrow's Employment with
Medivators and Retaliation Against Ms. Yarrow for Her Complaining
<u>About Mr. Luthy's Use of Demeaning and Condescending Language</u>**

83. Defendants admit that Yarrow submitted a 360 review of Luthy on or about August 4, 2015, and otherwise deny the allegations contained in Paragraph 83. By way of further response, Defendants state that Yarrow's 360 review is a document that speaks for itself.

84. Denied. By way of further response, Defendants state that Yarrow's 360 review is a document that speaks for itself.

85. Denied.

86. Defendants admit that Luthy and Yarrow had a telephone conversation on or about August 11, 2015 concerning Yarrow's job performance for fiscal year 2015, and otherwise deny the allegations contained in Paragraph 86. By way of further response, Defendants state that Yarrow failed to reach her total sales revenue requirement for fiscal year 2015, and ranked 15th out of 26 Capital Specialists in total sales revenue for fiscal year 2015.

87. Defendants admit that Luthy and Yarrow had a telephone conversation on or about August 11, 2015 concerning Yarrow's performance for fiscal year 2015, and otherwise deny the allegations contained in Paragraph 87. By way of further response, Defendants state that Yarrow failed to reach her total sales revenue requirement for fiscal year 2015, and ranked 15th out of 26 Capital Specialists in total sales revenue for fiscal year 2015.

88. Defendants admit that Luthy and Yarrow had a telephone conversation on or about August 11, 2015 concerning Yarrow's performance for fiscal year 2015, and otherwise deny the allegations contained in Paragraph 88. By way of further response, Defendants state that Yarrow failed to reach her total sales revenue requirement for fiscal year 2015, and ranked 15th out of 26 Capital Specialists in total sales revenue for fiscal year 2015.

89. Defendants admit that Luthy and Yarrow had a telephone conversation on or about August 11, 2015 concerning Yarrow's performance for fiscal year 2015, and otherwise

deny the allegations contained in Paragraph 89. By way of further response, Defendants state that Yarrow failed to reach her total sales revenue requirement for fiscal year 2015, and ranked 15th out of 26 Capital Specialists in total sales revenue for fiscal year 2015.

90. Defendants admit that Yarrow was placed on a Performance Improvement Plan on or about September 24, 2015, and otherwise deny the allegations contained in Paragraph 90.

91. Denied. By way of further response, Defendants state that Yarrow had failed to meet or exceed her sales revenue requirements for fiscal year 2014 and for fiscal year 2015, and that Yarrow's year-to-date sales revenue for fiscal year 2016 was similarly below her sales revenue requirement.

92. Denied.

93. Denied.

94. Denied.

95. Denied. By way of further response, Defendants state that Yarrow's PIP is a document that speaks for itself.

96. Denied.

97. Denied.

98. Denied. By way of further response, Defendants state that Yarrow's PIP is a document that speaks for itself.

99. Denied.

100. Denied.

101. Denied. By way of further response, Defendants state that Yarrow's PIP is a document that speaks for itself.

102. Denied.

103. Denied.

104. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 104, and therefore these allegations are deemed denied.

105. Denied.

106. Denied.

107. Denied.

108. Denied.

109. Denied.

110. Denied.  By way of further response, Defendants state that Yarrow's PIP is a document that speaks for itself.

111. Denied.

112. Denied.

113. Denied.

114. Denied.  By way of further response, Defendants state that Iuele was placed on a Performance Improvement Plan in the fall of 2015.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

**Because of the Unwarranted Stress that Mr. Luthy and Medivators Placed on
Ms. Yarrow, She was Forced to Take a Leave of Absence for Medical Reasons in 2015**

119. Denied.

120. Denied.

121.   Denied.

122.   Denied.

123.   Denied.

124.   Denied.

**Medivators Engages in Further Discriminatory and Retaliatory Conduct, Which Includes Rejecting Ms. Yarrow's Request for a Reasonable Accommodation and Refusing to Engage in any Interactive Process to Accommodate Her Disability**

125.   Denied.

126.   Denied.

127.   Denied.

128.   Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 128, and therefore these allegations are deemed denied.

129.   Denied.

130.   Denied.

131.   Denied.

132.   Defendants admit that Yarrow sent a written correspondence to Medivators on or about March 27, 2016, and otherwise deny the allegations contained in Paragraph 132.

133.   Denied.  By way of further response, Defendants state that Medivators sent a two-page, single-spaced letter to Yarrow on or about April 6, 2016 "following up on [her] most recent correspondence dated March 27, 2016."

134.   Defendants admit that Medivators sent a written correspondence to Yarrow on or about April 6, 2016, which document speaks for itself.

135.   Denied.

136. Denied. By way of further response, Defendants state that Medivators' letter of April 6, 2016 is a document that speaks for itself.

137. Denied.

138. Denied. By way of further response, Defendants state that Medivators' letter of April 6, 2016 is a document that speaks for itself.

139. Denied.

140. Denied. By way of further response, Defendants state that Medivators' letter of April 6, 2016 is a document that speaks for itself.

141. Defendants admit that Yarrow sent a letter to Medivators dated April 8, 2016 that, among other things, purported to request "a reasonable accommodation of reporting to a different manager," and otherwise deny the allegations contained in Paragraph 141.

142. Defendants admit that Yarrow sent a letter to Medivators dated April 8, 2016 that, among other things, made various representations and demands of Medivators, and otherwise deny the allegations contained in Paragraph 142.

**Medivators Continues Its False Claims About Ms. Yarrow's Performance**

143. Defendants admit that Medivators responded to Yarrow's EEOC charge by letter dated April 7, 2016, which document speaks for itself.

144. Denied.

145. Denied.

146. Denied.

147. Denied.

**Medivators Constructively Discharges Ms. Yarrow**

148. Denied.

149. Denied.

150. Denied.

151. Denied.

152. Denied.

153. Denied.

154. Denied.

155. Denied.

156. Denied.

<u>**COUNT ONE**</u>
**Sex (Gender) Discrimination in Violation of**
**Title VII, the NYSHRL, the NYCHRL and the NJLAD**

157. Defendants refer to their answers to Paragraphs 1 through 156 of the Complaint.

158. Denied.

159. Denied.

160. Denied.

161. Denied.

162. Denied.

163. Denied.

164. Denied.

165. Denied.

166. Denied.

167. Denied.

168. Denied.

169. Denied.

170.    Denied.

## COUNT TWO
### Retalition in Violation of
### Title VII, ADA, the NYSHRL, the NYCHRL and the NJLAD

171.    Defendants refer to their answers to Paragraphs 1 through 170 of the Complaint.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied.

179.    Denied.

180.    Denied.

181.    Denied.

182.    Denied.

183.    Denied.

## COUNT THREE
### Disability Discrimination in Violation of the
### ADA, the NYSHRL, the NYCHRL and the NJLAD

184.    Defendants refer to their answers to Paragraphs 1 through 183 of the Complaint.

185.    Denied.

186.    Denied.

187.    Denied.

188.    Denied.

189.	Denied.

190.	Denied.

191.	Denied.

192.	Denied.

193.	Denied.

194.	Denied.

195.	Denied.

196.	Denied.

197.	Denied.

## COUNT FOUR
### Failure to Accommodate in Violation of the
### ADA, the NYSHRL, the NYCHRL and the NJLAD

198.	Defendants refer to their answers to Paragraphs 1 through 197 of the Complaint.

199.	Denied.

200.	Denied.

201.	Denied.

202.	Denied.

203.	Denied.

204.	Denied.

205.	Denied.

206.	Denied.

207.	Denied.

208.	Denied.

209.	Denied.

## COUNT FIVE
### Aiding and Abetting Discrimination
### in Violation of the NYSHRL, the NYCHRL and the NJLAD

210. Defendants refer to their answers to Paragraphs 1 through 209 of the Complaint.

211. Denied.

212. Denied.

213. Denied.

214. Denied.

215. Denied.

## PRAYER FOR RELIEF

Defendants deny that Yarrow is entitled to any of the relief sought in the Complaint, including but not limited to any of the relief sought in the "**WHEREFORE**" clauses, or their subparts, which immediately follow Paragraphs 170, 183, 197, 209, and 215.

## GENERAL DENIAL

Defendants deny and each every allegation contained in the Complaint that is not specifically admitted herein.

## AFFIRMATIVE DEFENSES

Without assuming any burdens that they would not otherwise bear, Defendants assert the following affirmative defenses. In asserting the following affirmative defenses, Defendants do not knowingly or intentionally waive any applicable affirmative defense, and reserve the right to assert and rely on such other applicable affirmative defenses as may become available or apparent during the course of the proceedings. Defendants further reserve the right to amend their Answer and/or affirmative defenses accordingly, and/or delete defenses that they determine are not applicable.

## As and For a First Affirmative Defense

The Complaint fails, in whole or in part, to state a claim upon which relief may be granted or for which the damages sought can be awarded.

## As and For a Second Affirmative Defense

Yarrow has not satisfied all of the conditions precedent and/or procedural prerequisites to maintaining this action.

## As and For a Third Affirmative Defense

Yarrow's claims are barred, in whole or in part, by the applicable statutes of limitations and/or by the equitable doctrines of waiver, laches, estoppel, and/or unclean hands.

## As and For a Fourth Affirmative Defense

Yarrow's claims are barred, in whole or in part, because all of Defendants' employment decisions regarding Yarrow were based on legitimate, non-discriminatory business considerations, and were in no way based on Yarrow's sex, gender, alleged disability, or any other protected classification or characteristic.

## As and For a Fifth Affirmative Defense

Yarrow's claims are barred, in whole or in part, because all of Defendants' employment decisions regarding Yarrow were based on legitimate, non-retaliatory business considerations, and were in no way based on any complaint of unlawful conduct or protected activity by Yarrow.

## As and For a Sixth Affirmative Defense

Yarrow's claims are barred, in whole or in part, because the Complaint fails to plead facts showing that she was subjected to differential treatment due to a protected classification or characteristic.

## As and For a Seventh Affirmative Defense

Yarrow's claims are barred, in whole or in part, because the Complaint fails to plead facts showing that she was subject to an adverse employment action.

### As and For an Eighth Affirmative Defense

Yarrow's claims are barred, in whole or in part, because the Complaint fails to plead facts showing that she engaged in protected activity.

### As and For a Ninth Affirmative Defense

Yarrow's claims are barred, in whole or in part, because the Complaint fails to plead facts showing that she had a disability.

### As and For a Tenth Affirmative Defense

Yarrow's claims are barred, in whole or in part, because the Complaint fails to plead facts showing that, to the extent she had an alleged disability, she was not offered a reasonable accommodation for her alleged disability.

### As and For an Eleventh Affirmative Defense

Yarrow's claims are barred, in whole or in part, because the Complaint fails to plead facts showing that, to the extent she had an alleged disability, she was qualified to perform or could perform the essential functions of her job with or without a reasonable accommodation.

### As and For a Twelfth Affirmative Defense

Yarrow's claims are barred, in whole or in part, because the Complaint fails to plead facts showing that, to the extent she allegedly engaged in protected activity, there was a causal connection between that alleged protected activity and any alleged adverse employment action.

### As and For a Thirteenth Affirmative Defense

At all times relevant to the subject matter of this action, Defendants had in place and continue to have in place policies expressly prohibiting all forms of discrimination, harassment,

and retaliation in the workplace (hereinafter, "EEO Policies"). Defendants' EEO Policies were, and continue to be, widely distributed to its employees, including Yarrow. The EEO Policies contain effective complaint procedures and non-retaliation provisions, and are adhered to by Defendants. To the extent Yarrow experienced or believes she experienced discrimination and/or retaliation of any kind, her claims are barred, in whole or in part, due to her unreasonable failure to avail herself of the preventative and remedial measures made available to her by Defendants.

**As and For a Fourteenth Affirmative Defense**

Yarrow's claims are barred, in whole or in part, to the extent Yarrow has not suffered any actual damages.

**As and For a Fifteenth Affirmative Defense**

Yarrow's claims are barred, in whole or in part, to the extent the damages alleged in this action were caused by the acts or omissions of Yarrow for which Defendants have no legal responsibility or culpability.

**As and For a Sixteenth Affirmative Defense**

Yarrow has not sustained any legally cognizable damages or injuries by virtue of any matter alleged in the Complaint.

**As and For a Seventeenth Affirmative Defense**

The Complaint fails to plead facts necessary to sustain a claim for medical expenses.

**As and For an Eighteenth Affirmative Defense**

The Complaint fails to plead facts necessary to sustain a claim for punitive damages.

**As and For a Nineteenth Affirmative Defense**

To the extent that Yarrow claims punitive damages, those claims are barred because Defendants did not willfully, outrageously, or with malice or reckless indifference toward Yarrow.

### As and For a Twentieth Affirmative Defense

Some or all of the claims in the Complaint are limited and/or barred as duplicative causes of action which, if allowed to be asserted at trial, would improperly expose Defendants to the potential for double recovery.

### As and For a Twenty-First Affirmative Defense

Yarrow's claims are barred, in whole or in part, by the doctrine of after-acquired evidence.

### As and For a Twenty-Second Affirmative Defense

Yarrow's prayer for an award of attorneys' fees must fail and should be stricken from the Complaint because there is no basis for such an award.

### As and For a Twenty-Third Affirmative Defense

Yarrow's claims are barred, in whole or in part, because the Complaint fails to plead facts showing that any named Defendant was her "employer" within meaning of Title VII; the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*; the New York State Human Rights Law, New York Executive Law § 296(a); the New York City Human Rights Law, New York City Administrative Code § 8–107(1); and/or the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

### As and For a Twenty-Fourth Affirmative Defense

Defendants intend to rely upon any other defenses that may become available during the proceedings in this case, and hereby reserve the right to raise additional defenses and to

supplement those defenses asserted herein upon discovery of further information and investigation into Yarrow's claims.

WHEREFORE, Defendants respectfully request that the Court:

A.    Dismiss the Complaint in its entirety, with prejudice;

B.    Deny each and every demand, request, and/or prayer for relief contained in the Complaint;

C.    Award Defendants their costs and reasonable attorneys' fees; and

D.    Award Defendants such other and further relief as the Court deems just and proper.


Dated:  Short Hills, New Jersey
        November 18, 2016

**DLA PIPER LLP (US)**

By:  /s/ Joseph D. Guarino
     Joseph D. Guarino
     *Admitted Pro Hac Vice*

51 John F. Kennedy Parkway, Suite 120
Short Hills, NJ 07078
T: (973) 520-2550
F: (973) 520-2551
E-mail: joseph.guarino@dlapiper.com

Britt C. Hamilton
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
T: (212) 335-4500
F: (212) 335-4501
E-mail: britt.hamilton@dlapiper.com

*Attorneys for Defendants*